1  MORAN LAW
   Michael F. Moran SB# 121665
2        mmoran@moranelderlaw.com
   Lisa Trinh Flint SB# 243468
3        lflint@moranelderlaw.com
   5 Hutton Centre Drive, Suite 1050
4  Santa Ana, CA 92707
   Telephone: (714) 549-0333
5  Facsimile:  (714) 549-0444

6
   Attorneys for Plaintiff,
7  DEBRA ANN BLACKMON, in and through her Guardian ad Litem, Latasha
   Bracks
8

9              **UNITED STATES DISTRICT COURT**

10      **CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

11

| | |
|---|---|
| DEBRA ANN BLACKMON, in and through her Guardian ad Litem, Latasha Bracks,<br><br>Plaintiff,<br><br>vs.<br><br>VERNON HEALTHCARE CENTER; VERNON HEALTHCARE CENTER, LLC dba VERNON HEALTHCARE CENTER; ROCKPORT ADMINISTRATIVE SERVICES, LLC; BRIUS MANAGEMENT CO.; SHLOMO RECHNITZ; and DOES 1 through 60, inclusive,<br><br>Defendants. | CASE NO.: 2:21-cv-05608-DSF (JCx)<br>[*Assigned for All Purposes to Hon. Dale S. Fischer*]<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND TO STATE COURT**<br><br>[RE: Los Angeles Superior Court Case No. 21STCV18794]<br><br>Date:   September 20, 2021<br>Time:  1:30 p.m.<br>Dept.:  7D<br>Judge: Hon. Dale S. Fischer |

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

---

**MEMORANDUM OF POINTS AND AUTHORITIES**

# **TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ................................................................1

II.  RELEVANT FACTS ALLEGED IN PLAINTIFFS' COMPLAINT ....................3

    A.   Plaintiff Blackmon Is First Admitted To Defendants' Facility With A History Of Dementia And Diabetes. ............................................................3

    B.   Blackmon Contracts COVID-19 During Her Second Month At Defendants' Facility, But The Staff Continues To Neglect Her Care. ....................4

    C.   Blackmon Develops Hyperglycemia, Severe Diabetic Ketoacidosis, Dehydration, Malnourishment, And Severe Acute Renal Failure, As A Result Of Defendants' Neglect In Her Care And Treatment.........................................6

III. PROCEDURAL BACKGROUND ........................................................7

IV.  LEGAL ARGUMENT ...................................................................8

    A.   THE LEGAL STANDARD FOR REMOVAL AND MOTION TO REMAND ...............................................................................8

    B.   THE PREP ACT DOES NOT APPLY TO PLAINTIFF'S CLAIMS.........9

        a.   The PREP Act .......................................................9

        b.   Definition of "Covered Persons" Under the PREP Act ......................10

        c.   Defendants Do Not Meet the Definition of "Covered Person(s)" .......11

        d.   The Loss Must Be Caused By, Arise Out Of, Relate To, Or Result From The "Use" Or "Administration" Of "Covered Countermeasures"...14

        e.   The Injuries Alleged by Blackmon Are Not Caused By or Related to Defendants' "Use" or "Administration" of Any "Covered Countermeasures" .......................................................15

        f.   Defendants' Inaction Do Not Equate to a "Non-Use" or "Non-Administration" of a Covered Countermeasure Exception ......................17

    C.   THE PREP ACT DOES NOT COMPLETELY PREEMPT BLACKMON'S STATE LAW CLAIMS ................................................19

        a.   The Legal Standard for Complete Preemption....................................19

ii

b.   This Court, In Prior Cases, Does Not Follow OGC's Advisory Opinion [AO 21-01] ....................................................................................21

c.   *McCalebb* Is a Case Very Analogous to this Case ..............................21

d.   The PREP Act Does Not Meet the Two-Pronged Test under the *Grable* Doctrine ...............................................................................................23

e.   This Court Should Decline to Follow the Holding in *Garcia* ..............23

D.   THERE IS NO FEDERAL OFFICER JURISDICTION UNDER 28 U.S.C. § 1442(a)(1) .................................................................................................24

V.   CONCLUSION .....................................................................................................25

**MEMORANDUM OF POINTS AND AUTHORITIES**

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Babasa v. LensCrafters, Inc.*, 498 F.3d 972 (9th Cir. 2007) .......................................9

4

*Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987) .......................................20

5

*City of Oakland v. BP PLC*, 969 F.3d 895 (9th Cir. 2020) ....................20

6

*Dupervil v. All. Health Operations*, No. 20-CV-4042 (PKC)(PK)

7

  (E.D.N.Y. Feb. 2, 2021) .......................................12

8

*Durham v. Lockheed Martin Corp.*, 445 F.3d 1247 (9th Cir. 2006) ......................9

9

*Estate of Acosta v. WDW Joint Venture*, No. CV 21-05762 PA (MRWx)

10

  (C.D. Cal. July 21, 2021).......................................24

11

*Estate of McCalebb v. AG Lynwood, LLC*, Case No. 2:20-cv-09746-SB-PVC

12

  (C.D. Cal. March 1, 2021).......................................21

13

*Fidelitad, Inc. v. Insitu, Inc.*, 904 F.3d 1095 (9th Cir. 2018) ......................24, 25

14

*Garcia v. Welltower OpCo Group LLC*, 2021 WL 492581(C.D. Cal. Feb. 10, 2021).23

*Grable & Sons Metal Products, Inc. v. Darue Eng'g. & Mf'g.*,

15

  545 U.S. 308 (2005) .......................................19, 22

16

*Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).......................................9

17

*Hansen v. Grp. Health Coop.*, 902 F.3d 1051 (9th Cir. 2018).......................................20

18

*Ivey v. Serrano Post Acute, LLC*, No. CV 20-11773 DSF (SKx)

19

  (C.D. Cal. Mar. 25, 2021).......................................20, 21, 24

20

*Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375.......................................8

21

*Martin v. Serrano Post Acute LLC*, No. 20-cv-5937, 2020 WL 5422949

22

  (C.D. Cal. Sept. 10, 2020) .......................................24

23

*Martin v. Serrano Post Acute LLC*, No. CV-21-187 DSF (SKx)

24

  (C.D. Mar. 25, 2021).......................................21

25

*McCalebb*, No. 2:20-cv-09746-SB-PVC (C.D. Cal. March 1, 2021).......................................21

26

*Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987).......................................20

27

*Prize Frize, Inc. v. Matrix (U.S.) Inc.*, 167 F.3d 1261, 1265 (9th Cir. 1999).......................9

28

*Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) .......................................14

**MEMORANDUM OF POINTS AND AUTHORITIES**

*Smith v. Berryhill*, 139 S. Ct. 1765, 1778-79 (2019).....................................21

*Stone v. Long Beach Healthcare Ctr., LLC*, No. CV 21-326-JFW (PVCx), 2021 WL

    1163572, (C.D. Cal. Mar. 26, 2021)...................................................20

*Thomas v. Century Villa Inc.*, No. 2:21-cv-03013-MCS-KS

    (C.D. Cal. June 10, 2021) ...............................................................15

*Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 153 (2007) .........................24

**Statutes**

28 U.S.C. § 1441(a).................................................................2, 3, 8, 19, 25

28 U.S.C. § 1442(a).........................................................................24

28 U.S.C. § 1442(a)(1) ...............................................................2, 3, 24, 25

28 U.S.C. § 1447...............................................................................9

28 U.S.C. § 1447(c)...........................................................................9

42 U.S.C. § 247d-6d(a)(1)...........................................9, 14, 16, 17, 20

42 U.S.C. § 247d-6d(a)(2)(B) .........................................................10, 14

42 U.S.C. § 247d-6d(b) ....................................................................9

42 U.S.C. § 247d-6d(i)(1).................................................................15

42 U.S.C. § 247d-6d(i)(7)(A).............................................................15

42 U.S.C. § 247d-6d(i)(8).............................................................10, 13

42 U.S.C. § 247d-6e(a)....................................................................19

42 U.S.C. § 247d-6d(d)(1).................................................................19

42 U.S.C. § 247d-6d(e)(1).................................................................19

42 U.S.C. § 247d-6d(i)(2)(B) .............................................................10

42 U.S.C. § 247d-6d(i)(6).............................................................10, 12

**Other Authorities**

85 Fed.Reg. 15200.........................................................................14

85 Fed. Reg. 15202.....................................................................10, 12

85 Fed. Reg. 79194.....................................................................17, 18

85 Fed. Reg. 79197.....................................................................17, 18

v

---

**MEMORANDUM OF POINTS AND AUTHORITIES**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   PRELIMINARY STATEMENT

1.   This action stems from a complaint originally filed on May 19, 2021, under Los Angeles County Superior Court Case No. 21STCV18794, by Plaintiff Debra Ann Blackmon ("Blackmon"), in and through her Guardian at Litem, Latasha Bracks ("Bracks"), against defendants Vernon Healthcare Center ("Vernon Facility"), Vernon Healthcare Center, LLC dba Vernon Healthcare Center ("Vernon LLC"), Rockport Administrative Services, LLC ("Rockport"), Brius Management Co. ("Brius"), and Shlomo Rechnitz ("Rechnitz") [collectively, "Defendants]. See Dkt. No. 1. Blackmon filed her complaint against Defendants alleging she sustained serious injuries while under Defendants' care at Defendants' 24-hour skilled nursing facility.

2.   When Blackmon was first admitted to Defendants' facility, she suffered diabetes and dementia requiring assistance with her activities of daily living, including the monitoring of her blood sugar level and administering her diabetic medicine. Her complaint alleges that during her brief stay at Defendants' facility, Blackmon's health deteriorated due to Defendants' neglect of her care and treatment. During her second month there, Blackmon contracted COVID-19 and was placed in isolation where Defendants' staff further neglected her care and treatment.

3.   While in isolation, Blackmon's health continued to deteriorate rapidly, but Defendants' staff failed to notice the change in her condition. As such, Defendants failed to notify her physician of the change in her condition and so she did not receive necessary medical treatment in a timely manner. As a result of Defendants' neglect, Blackmon developed critically high glucose levels, hyperglycemia, severe diabetic ketoacidosis, severe dehydration, malnourishment, and severe acute renal failure. Her medical condition caused her to suffer long-term permanent injuries to her mental and physical state.

1

4.      In her complaint, Blackmon alleges Defendants are liable for providing her with substandard care and treatment at their facility, and their negligence caused her to suffer serious harm and injuries. She alleges state law claims for elder abuse under the California Welfare and Institutions Code, general negligence, violation of California's Health and Safety Code, and willful misconduct.

5.      In response, Defendants Vernon LLC, Rockport, and Brius removed this case on July 12, 2021 to federal court on the basis of federal question jurisdiction under 28 U.S.C. § 1441(a), because Defendants argue Blackmon asserts claims which arise under federal law within the meaning of § 1331. More specifically, Defendants assert Blackmon's claims are completely preempted by the federal Public Readiness and Emergency Preparedness Act ("PREP Act"), under 42 U.S.C. § 247d-6d. Under the PREP Act, "covered person(s)" are immune to liability with respect to all claims for loss caused by, arising out of, relating to, or resulting from the "administration to or use by an individual of a covered countermeasure." Defendants argue that because the PREP Act is applicable to Blackmon's claims, the PREP Act completely preempts her state law causes of action, including her willful misconduct claim.

6.      In addition, Defendants removed this action to federal court based on federal officer jurisdiction under 28 U.S.C. § 1442(a)(1), maintaining that they are sued for acts they undertook at the direction of a federal officer. Defendants assert they were engaged in efforts to assist or help carry out the duties of tasks of Centers for Medicare & Medicaid Services ("CMS") and Center for Disease Control ("CDC") in response to the COVID-19 pandemic.

7.      Finally, Defendants Vernon LLC, Rockport, and Brius, have also brought forth a motion to dismiss under Federal Rule of Procedure rule 12(b)(6) for failure to state a claim, and under rule 12(b)(1) for lack of subject matter

**MEMORANDUM OF POINTS AND AUTHORITIES**

jurisdiction, on the same grounds that the PREP Act applies to bar Blackmon's claims, which said hearing is set to be heard on August 16, 2021 in this Court.

8.    Nevertheless, Defendants' grounds for removal are invalid because they are predicated on the application of the PREP Act to Blackmon's claims. The only connection between Blackmon's claims of injury and the PREP Act, is that Blackmon happened to contract COVID-19 while at Defendants' facility, but she does not allege injuries in her complaint that are caused by, arose out of, related to, or resulted from, Defendants' "use" or "administration" of a "covered countermeasure," as required under the PREP Act. Further, Defendants do not establish that they meet the definition of "covered person(s)" under the PREP Act for this federal immunity to apply to Blackmon's claims.

9.    Moreover, numerous federal courts in this Ninth Circuit, including this Court but excluding one, have uniformly concluded that the PREP Act does not have exclusive or complete federal preemption over these types of state law claims, and that the federal officer jurisdiction does not apply to them as well.

10.    Because Defendants are unable to establish their basis of federal question jurisdiction under 28 U.S.C. § 1441(a) or federal officer jurisdiction under 28 U.S.C. § 1442(a)(1), removal of this case from state court was improper, and thus, this action should be remanded back to Los Angeles County Superior Court.

## II.    RELEVANT FACTS ALLEGED IN PLAINTIFFS' COMPLAINT

### A. Plaintiff Blackmon Is First Admitted To Defendants' Facility With A History Of Dementia And Diabetes.

11.    Defendants own, operate, manage, and/or are the licensee of Vernon Facility, which is a 24-hour skilled nursing facility that provides long-term custodial care. *See* **Exhibit A**, Plaintiff's Complaint, *Blackmon v. Vernon Healthcare Center*, No. 21STCV18794 (Sup. Ct. Cal. May 19, 2021) ["Cmplt."] ¶¶ 3-8. Plaintiff Blackmon was a resident of Vernon Facility from October 15,

**MEMORANDUM OF POINTS AND AUTHORITIES**

2020, to December 31, 2020. *Id*. ¶ 20.

12.    She was 65 years old when she first was admitted into Defendants' facility, with a history of diabetes, dementia, hypertension, generalized weakness, and was incontinent of bowel and bladder requiring the use of adult briefs. *See* Ex. A, Cmplt. ¶¶ 17-18, 20. Because of her diabetes and dementia, Blackmon required long-term custodial care with her Activities of Daily Living (ADL's), especially regular monitoring of her blood sugar level as well as assistance with her taking her diabetes medication. *Id*. ¶¶ 19-20, 24, 27.

13.    During the first week Blackmon was at Defendants' facility, Blackmon's daughter, Bracks, saw her mother was progressing well. *See* Ex. A, Cmplt. ¶ 26. However, over the course of the next several weeks, Bracks began noticing the deterioration in her mother's physical condition while under the care of Defendants. *Id*. ¶¶ 27-28. Blackmon appeared disheveled and run down, with her eyes looking sunken, her skin appeared dry, and she had the general appearance of someone 20 years older. *Id*. ¶ 30. At one point, Blackmon's hair was shaved off by the staff without her family's prior knowledge, because they failed to groom Blackmon hair regularly which caused it to be matted and tangled. *Id*. ¶ 31.

14.    Due to her mother's appearance, Bracks also suspected the staff was not ensuring that Blackmon ate properly or enough. *See* Ex. A, Cmplt. ¶ 32. When Bracks complained to the nursing staff that her mother looked tired and deteriorated, they reassured her mother was being taken care of and that they would continue to keep an eye on her. *Id*. ¶ 30.

**B. Blackmon Contracts COVID-19 During Her Second Month At Defendants' Facility, But The Staff Continues To Neglect Her Care.**

15.    During the second month of her stay at Vernon Facility, Blackmon contracted COVID-19, and was placed into isolation where the lack of care from the nursing staff continued. *See* Ex. A, Cmplt. ¶ 33. Bracks became even more

4

concerned that her mother would be further neglected by staff while in isolation, since there was an outbreak of COVID-19 at Vernon Facility, and Defendants' nursing staff was unable to attend to all the needs of their residents. *Id*. ¶ 33. This prompted Bracks to remind the staff of her mother's dementia, and they still needed to care for her and assist her with her needs because Blackmon would not remember to ask for help. *Id*. ¶ 33.

16.     To ensure proper care of Blackmon's diabetes condition, Defendants' nursing staff was required to check her blood sugar level at least 2-3 times a day, and administer her Metformin medication as ordered by her physician. *See* Ex. A, Cmplt. ¶ 34. Metformin is a medication used to treat type II diabetes by lowering the blood sugar levels in the body to help restore the way the body uses food to make energy. *Id*. ¶ 34. Improper administration of Metformin can lead to metformin toxicity (overdose), which could lead to dangerous and lethal side effects. *Id*. ¶ 34.

17.     One critical side effect of improper administration of Metformin is hyperglycemia, or increased levels of glucose in the blood stream, which could cause long-term complications such as cardiovascular disease, nerve damage, and kidney damage. *See* Ex. A, Cmplt. ¶ 34. With diabetic residents who contract COVID-19, they are at higher risk for hyperglycemia, which meant Defendants' staff needed to provide more frequent and special observation of Blackmon's health condition as well as her blood sugar levels. *Id*. ¶ 34.

18.     Although Defendants' nursing staff continued to reassure Blackmon's family that they were taking care of her needs, the staff had in fact not provided her with adequate care and treatment. *See* Ex. A, Cmplt. ¶ 34-36. While Blackmon suffered from COVID-19 in isolation, Defendants' nursing staff did not check on her to ensure she had adequate hydration and nutrition, they failed to routinely check her blood sugar levels, and they did not properly administer her diabetes medication, Metformin. *Id*. ¶ 35. Because of their

5

wrongful conduct and neglect, Blackmon's physical and mental condition deteriorated rapidly, but went unnoticed by staff for weeks. *Id*. ¶ 35.

### C. Blackmon Develops Hyperglycemia, Severe Diabetic Ketoacidosis, Dehydration, Malnourishment, And Severe Acute Renal Failure, As A Result Of Defendants' Neglect In Her Care And Treatment.

19.     On December 31, 2020, less than three months since Blackmon first got admitted to Vernon Facility, she was found non-responsive and in respiratory failure. *See* Ex. A, Cmplt. ¶ 37. Once she was transferred to a hospital, she was diagnosed with a critically high glucose level, severe hyperglycemic and severe diabetic ketoacidosis. *Id*. ¶ 39. Blackmon's glucose level was 1,404 mg/dL when the normal range for an adult is less than 140 mg/dL. *Id*. ¶ 39. Lab results also showed that Blackmon had suffered from severe dehydration, malnourishment, electrolyte imbalance, and severe acute renal failure. *Id*. ¶ 40. She was then admitted into the hospital's intensive care unit in a comatose state. *Id*. ¶ 42.

20.     It was determined that Blackmon's diabetic ketoacidosis was attributed to Metformin toxicity (overdose), because Defendants' nursing staff failed to monitor her blood sugar level regularly as needed, and as a result, they improperly administered her diabetic medication, Metformin, leading to her developing the Metformin toxicity and hyperglycemia. *See* Ex. A, Cmplt. ¶¶ 34, 43. Though despite her poor condition, Blackmon showed no signs or symptoms of any severe respiratory problems associated with COVID-19. *Id*. ¶ 41.

21.     After being treated in the hospital for ten days, Blackmon was discharged back to Vernon Facility. *See* Ex. A, Cmplt. ¶ 45. Very shortly thereafter, she developed dysphagia requiring her to be hospitalized again to surgically implant a gastric feeding tube in her. *Id*. ¶ 47. During the three and half months she was a resident of Vernon Facility and under Defendants' custodial care, Blackmon's mental and physical condition deteriorated so rapidly. *Id*. ¶ 47.

22.     Prior to her admission, Blackmon was still able to feed, dress, and

**MEMORANDUM OF POINTS AND AUTHORITIES**

bathe herself independently, she could ambulate on her own without help, and only needed minor assistance with incontinence care and toileting, and with monitoring her diabetes. *See* Ex. A, Cmplt. ¶ 47. Blackmon was content with being able to care for herself independently. *Id*. ¶ 47.

23.     From the period since Blackmon was under Defendants' care at Vernon Facility, she was never the same mentally and physically again.  *See* Ex. A, Cmplt.  ¶ 47. Because of the serious injuries she suffered due to Defendants' neglect and wrongful conduct, Blackmon became bedridden and wheelchair bound, lost the ability to care for herself completely, is now dependent on being fed through a gastric tube, requires both Metformin and insulin to control her diabetes, and she suffers from depression.  *Id*. ¶ 47.

## III.   <u>PROCEDURAL BACKGROUND</u>

24.     On May 19, 2021, Blackmon filed a complaint in Los Angeles County Superior Court, alleging claims for elder abuse under the California Welfare and Institutions Code, general negligence, violation of California's Health and Safety Code, and willful misconduct against Defendants. *See* Ex. A, Cmplt. Blackmon's complaint alleges Defendants neglected, abandoned her care, failed to protect her from health hazards, failed to provide care for her physical health needs, failed to exercise the degree of care that a reasonable person in a like position would exercise, which caused her to become dehydrated, malnourished, and to develop severe hyperglycemia and severe diabetic ketoacidosis, resulting in a significant pain and suffering, generalized weakness, dysphagia, and overall deterioration in her physical and mental condition. *Id*. ¶ 23.

25.     The complaint also alleges Defendants failed to regularly monitored or assessed Blackmon with licensed nursing staff qualified to make proper medical assessments. *See* Ex. A, Cmplt. ¶ 46. Because the nursing staff did not continually and thoroughly assess Blackmon, they did not provide her with

7

adequate hydration and nutrition, they failed to routinely check her blood sugar levels, and they did not properly administer her diabetes medication, Defendants caused Blackmon to suffer serious harm and injuries. *Id.* ¶ 46.

26.     In addition, Defendants' staff failed to notice her change in condition when she began exhibiting signs and symptoms of physical deterioration, and they failed to notify her treating physician of the change in her condition. *See* Ex. A, Cmplt. ¶ 46. This prevented Blackmon from receiving the medical treatment in a timely manner, and as such, the delay in care and treatment exacerbated her medical conditions. *Id.* ¶ 46.

27.     Moreover, Blackmon's complaint alleges Defendants intentionally staffed Vernon Facility with an insufficient number of care personnel, many of whom were not properly trained nor qualified to care for the elders and dependents. *See* Ex. A, Cmplt. ¶ 48. The understaffing and lack of training was designed to reduce labor costs and wrongfully increase their business profits at the expense of residents, by the physical abuse and neglect of their residents. *Id*. ¶ 48.

28.     On July 9, 2020, defendants Vernon LLC, Rockport, and Brius removed this case to federal court. *See* Dkt No. 1. They now bring forth a motion to dismiss on the basis that the PREP Act immunity provides an affirmative defense to Plaintiff's claims, and that the claims are preempted by the PREP Act.

## IV.     <u>LEGAL ARGUMENT</u>

### A. THE LEGAL STANDARD FOR REMOVAL AND MOTION TO REMAND

29.     Federal courts are courts of limited jurisdiction, having subject matter jurisdiction only over matters authorized by the Constitution and Congress. *See*, e.g., *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). A

1   removed action must be remanded to state court if the federal court lacks subject

2   matter jurisdiction. 28 U.S.C. § 1447(c).

3       30.   "The burden of establishing federal jurisdiction is on the party

4   seeking removal, and the removal statute is strictly construed against removal

5   jurisdiction." *Prize Frize, Inc. v. Matrix (U.S.) Inc.*, 167 F.3d 1261, 1265 (9th Cir.

6   1999). "Federal jurisdiction must be rejected if there is any doubt as to the right

7   of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.

8   1992). A motion to remand is the proper procedure for challenging removal.

9   *Babasa v. LensCrafters, Inc.*, 498 F.3d 972, 974 (9th Cir. 2007).

10      31.   If a defendant has improperly removed a case over which the district

11  court lacks subject matter jurisdiction, the district court shall remand the case to

12  the state court. *S* 28 U.S.C. § 1447(c); *see* also *Durham v. Lockheed Martin*

13  *Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006).

14  **B. THE PREP ACT DOES NOT APPLY TO PLAINTIFF'S CLAIMS**

15      **a. The PREP Act**

16      32.   The PREP Act authorizes the Secretary of Health and Human

17  Services ("HHS") to issue a declaration determining that a disease or other health

18  condition or other threat to health constitutes a public health emergency. 42

19  U.S.C. § 247d-6d(b). On March 10, 2020, the HHS Secretary issued a

20  Declaration Under the Public Readiness and Emergency Preparedness Act for

21  Medical Countermeasures Against COVID-19 ("Declaration") which declared

22  COVID-19 pandemic a public emergency under the PREP Act. 85 Fed. Reg.

23  15198-01.

24      33.   As such, the PREP Act provides immunity from liability from "all

25  claims for loss caused by, arising out of, relating to, or resulting from the

26  administration to or the use by an individual of a covered countermeasure." 42

27  U.S.C. § 247d-6d(a)(1). The immunity apples to "any claim of loss that has a

28  *causal relationship* with the administration to or use by an individual of a covered

9

countermeasure." 42 U.S.C. § 247d-6d(a)(2)(B) [italics added].

### b. Definition of "Covered Persons" Under the PREP Act

34.   The term "covered person," when used with respect to the administration or use of a covered countermeasure, means a person or entity that is: (i) a manufacturer; (ii) a distributor; (iii) a program planner; (iv) a qualified person who prescribed, administered, or dispensed such countermeasure; or (v) an official, agent, or employee of any of the above. 42 U.S.C. § 247d-6d(i)(2)(B).

35.   A "program planner" means "a state or local government, including an Indian tribe; a person employed by the state or local government; or other person who supervises or administers a program with respect to the administration, dispensing, distribution, provision, or use of a Covered Countermeasure, including a person who establishes requirements, provides policy guidance, or supplies technical or scientific advice or assistance or provides a facility to administer or use a Covered Countermeasure in accordance with the [Declaration]." 85 Fed. Reg. at 15202 (March 17, 2020); 42 U.S.C. § 247d-6d(i)(6).

36.   A "qualified person" when used with respect to the administration or use of a covered countermeasure, means: (A) a licensed health professional or other individual who is authorized to prescribe, administer, or dispense such countermeasures under the law of the State in which the countermeasure was prescribed, administered, or dispensed; or (B) a person within a category of persons identified in a declaration by the Secretary. 42 U.S.C. § 247d-6d(i)(8).

37.   The categories of a "qualified person" identified by the HHS Secretary are: (a) any person authorized in accordance with the public health and medical emergency response of the Authority Having Jurisdiction… to prescribe, administer, deliver, distribute or dispense the covered countermeasure, and their officials, agents, employees, contractors and volunteers; (b) any person authorized to prescribe, administer, or dispense the covered countermeasures or

**MEMORANDUM OF POINTS AND AUTHORITIES**

who is otherwise authorized to perform an activity under an Emergency Use Authorization…; (c) any person authorized to prescribe, administer, or dispense covered countermeasures in accordance with Section 564A of the FD&C Act; (d) a state-licensed pharmacist or intern who administers childhood vaccines or COVID-19 vaccines; (e) healthcare personnel using telehealth to order/administer covered countermeasures for patients in a state other than the state where they are licensed or permitted to practice. 85 Fed. Reg. at 79195 (Dec. 9, 2020). Qualified persons also include healthcare providers with expired licenses to prescribe, dispense, or administer COVID-19 vaccines in any state. 86 Fed. Reg. at 7873 (Feb. 2, 2021).

### c. Defendants Do Not Meet the Definition of "Covered Person(s)"

38.   In their Notice of Removal, Defendants assert they are "covered person(s)" and "program planners" because Vernon Facility is a skilled nursing facility licensed by the State of California, and their employees are "program planners" because they are "qualified persons who prescribed, administered or dispensed" a countermeasure. *See* Dfs.' Notice of Removal, Dkt. No. 1, ¶ 18.

39.   In support of their argument, Defendants cite to an opinion letter issued by HHS's Office of General Counsel, dated August 14, 2020, which states that "senior living communities are 'covered persons' under the PREP Act when they provide facility to administer or use a covered countermeasure…" *See* Lttr. from Robert P. Charrow, General Counsel, HHS (Aug. 14, 2020), attached as Ex. B to Dfs.' Notice of Removal, Dkt. No. 1. The letter states that "senior living communities are 'covered persons' under the PREP Act when they provide facility to administer or use a covered countermeasure…" *See Id.* at 1.

40.   However, this opinion letter is not binding because it states, "[T]his letter is not a final agency action or final order. <u>Nor does it bind HHS or the federal courts</u>. It does not have the force or effect of law." *See* Ex. B to Dfs.' Notice of Removal, Dkt. No. 1, at 2. Additionally, neither the text of the PREP

11

---

**MEMORANDUM OF POINTS AND AUTHORITIES**

1   Act statute nor the HHS Secretary's Declaration expressly includes nursing

2   homes within the definition of "covered person." *See Dupervil v. All. Health*

3   *Operations*, No. 20-CV-4042 (PKC)(PK), (E.D.N.Y. Feb. 2, 2021) 1, 9.

4       41.    Next, Defendants assert they or their employees fall within the

5   definition of "program planners" because they purportedly supervised the

6   infection control policy program at Vernon Facility, including the use of FDA-

7   approved personal protective equipment ("PPE"), as well as diagnostic

8   countermeasures that were distributed or administered to Blackmon. *See* Dfs.'

9   Notice of Removal, ¶ 20. Defendants also claim their employees were acting as

10   "qualified persons" under the PREP Act because they administered, delivered,

11   and used FDA-covered countermeasures, like PPE and COVID-19 tests, etc. *See*

12   *id*. at ¶ 21. In addition, Defendants argue they were engaged in management and

13   operation of countermeasure programs in an effort to diagnose and prevent

14   COVID-19. *See id.* at ¶ 22.

15       42.    First, Defendants' actions, as alleged in the complaint, do not meet

16   the definition of a "program planner" under the PREP Act because Defendants

17   are not a state or local government, they are not employed by the state or local

18   government, nor do not supervise or administer a program with respect to the

19   administration, dispensing, distribution, provision, or use of a covered

20   countermeasure, and they do not establish requirements, provides policy

21   guidance, or supply technical or scientific advice or assistance or provide a

22   facility to administer or use a covered countermeasure in accordance with the

23   HHS Secretary's Declaration. *See* 85 Fed. Reg. at 15202 (March 17, 2020); *see*

24   *also* 42 U.S.C. § 247d-6d(i)(6).

25       43.    Furthermore, the allegations in the complaint do not establish nor

26   show Defendants or their employees fall under any of the categories of a

27   "qualified person" under the PREP Act. Defendants nor their employees are a

28   licensed health professional or other individual authorized to prescribe,

**MEMORANDUM OF POINTS AND AUTHORITIES**

administer, or dispense such countermeasures under the law of the State in which the countermeasure was prescribed, administered, or dispensed, nor are they considered a person within a category of persons identified in a declaration by the Secretary. 42 U.S.C. § 247d-6d(i)(8). Defendants or their employees are not: (a) any person authorized in accordance with the public health and medical emergency response of the Authority Having Jurisdiction… to prescribe, administer, deliver, distribute or dispense the covered countermeasure, and their officials, agents, employees, contractors and volunteers; (b) any person authorized to prescribe, administer, or dispense the covered countermeasures or who is otherwise authorized to perform an activity under an Emergency Use Authorization…; (c) any person authorized to prescribe, administer, or dispense covered countermeasures in accordance with Section 564A of the FD&C Act; (d) a state-licensed pharmacist or intern who administers childhood vaccines or COVID-19 vaccines; or (e) a healthcare personnel using telehealth to order/administer covered countermeasures for patients in a state other than the state where they are licensed or permitted to practice. *See* 85 Fed. Reg. at 79195 (Dec. 9, 2020). Also, they are not a healthcare provider with expired licenses to prescribe, dispense, or administer COVID-19 vaccines in any state. *See* 86 Fed. Reg. at 7873 (Feb. 2, 2021).

44.   Defendants simply do not fit within any of the specific categories of "qualified person" or under the definition of a "program planner" that would qualify them as "covered person(s)" under the PREP Act. Even if Defendants could show they are covered persons because they engaged in the purported activities claimed in their Notice of Removal, they would not be able to establish this material fact without introducing extrinsic evidence in this proceeding since it is an issue of material fact in dispute. But because Defendants' assertion of the PREP Act as an affirmative defense raises disputed issues of fact, dismissal under Rule 12(b)(6) would be improper. *See Scott v. Kuhlmann*, 746 F.2d 1377, 1378

**MEMORANDUM OF POINTS AND AUTHORITIES**

(9th Cir. 1984) (per curiam). Based on the face of the complaint and at this early stage in litigation, Defendants have not established they are a "covered person" under the PREP Act.

### d. The Loss Must Be Caused By, Arise Out Of, Relate To, Or Result From The "Use" Or "Administration" Of "Covered Countermeasures"

45.     To be availed the PREP Act's immunity, the claims for loss must be caused by, arise out of, relate to, or result from the administration to or the use by an individual of a covered countermeasure." *See* 42 U.S.C. § 247d-6d(a)(1). The claim for loss must have a casual relationship with the administration to or use by an individual of a covered countermeasure. *See* 42 U.S.C. § 247d-6d(a)(2)(B).

46.     "Administration" of a "covered countermeasure" means physical provision of the countermeasures to recipients, or activities and decisions directly relating to public and private delivery, distribution, and dispensing of the countermeasures to recipients; management and operation of countermeasures programs; or management and operation of locations for purpose of distributing and dispensing countermeasures. *See* 85 Fed.Reg. 15200, 15202 (March 17, 2020). The definition of "administration" extends only to physical provision of a countermeasure to a recipient, such as vaccination or handing drugs to patients, and to activities related to management and operation of programs and locations for providing countermeasures to recipients, but only insofar as those activities directly related to the countermeasure activities.  (*Ibid*.)

47.     The PREP Act defines "covered countermeasure" as the following: (1) a "qualified pandemic or epidemic product"; (2) a "security countermeasure"; (3) a drug…, biological product…, or device… that is authorized for emergency use in accordance with section 564, 564A, or 564B of the Federal Food, Drug, and Cosmetic Act; or (4) a respiratory protective device that is approved by the National Institutes for Occupational Safety and Health..." *See* 42 U.S.C. § 247d-

14

6d(i)(1); *Thomas v. Century Villa Inc.*, No. 2:21-cv-03013-MCS-KS (C.D. Cal. June 10, 2021) 1, 4.

48.   "Covered countermeasures" can also be: (a) any antiviral, any drug, biologic respiratory protective device, or any vaccine manufactured, used, designed, developed, modified, licensed, or procured: (i) to diagnose, mitigate, prevent, treat, or cure COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom; or (ii) to limit the harm that COVID-19, or the transmission of SAR-CoV-2 or a virus mutating therefrom, might otherwise cause;  (b) a product manufactured, used, designed, developed, modified, licensed, or procured to diagnose, mitigate, prevent, treat, or cure a serious or life-threatening disease or condition caused by a product described in paragraph (a) above; (c) a product or technology intended to enhance the use or effect of a product described in paragraph (a) or (b) above; or (d) any device used in the administration of any such product, and all components and constituent materials of any such product. *See* Fourth Amendment, 85 Fed. Reg. 79,190, 79,196 (December 9, 2020).

49.   A "qualified pandemic or epidemic product" is a drug, biological product, or device that is a product manufactured, used,… to diagnose, mitigate, prevent, treat, or cure: (1) a pandemic or epidemic, or limit their harm; (2) serious or life-threatening disease or condition caused by a product described in (1); or a product or technology intended to enhance the use or effect of a drug, biological product, or device described above.  *See* 42 U.S.C. § 247d-6d(i)(7)(A).

### e. The Injuries Alleged by Blackmon Are Not Caused By or Related to Defendants' "Use" or "Administration" of Any "Covered Countermeasures"

50.   Even assuming for argument's sake that Defendants can establish they are "covered persons" under the PREP Act, and that they engaged in the "use" or "administration" of "covered countermeasures," the PREP Act is inapplicable here because Blackmon does not allege her injuries were caused by,

15

arose out of, related to, or resulted from, Defendants' "use" or "administration" of "covered countermeasures." *See* 42 U.S.C. § 247d-6d(a)(1). Defendants argue they used or administered "covered countermeasures" such as PPE, infection control programs, COVID-19 devices, medication, test, etc. (assuming they meet the criteria of "covered countermeasures"), but Blackmon's alleged injuries were not caused by any use or nonuse of PPE, infection control programs, or devices. Although she contracted COVID-19 and was placed into isolation, that was not alleged to be the cause of her injuries. Nowhere in her complaint does Blackmon claim she contracted COVID-19 from Defendants' use or nonuse of PPE, or other possible covered countermeasures.

51.     What she does claim was the cause of her injuries was the substandard level of care she received at Defendants' facility before she contracted COVID-19 and after. In fact, Blackmon alleges Defendants neglected her, abandoned her care, failed to protect her from health hazards, failed to provide care for her physical health needs, and failed to exercise the degree of care that a reasonable person in a like position would exercise. *See* Ex. A, Cmplt. ¶ 23. During her first few weeks at Vernon Facility, Blackmon already appeared disheveled, run down, tired and deteriorated, as if she was not properly eating or being appropriately cared for. *Id*. ¶ 30-31.

52.     After she contracted COVID-19 and was placed in isolation, Blackmon was further neglected by Defendants because the staff failed to monitor her blood sugar level regularly, did not administer her diabetes medication, Metformin, correctly, and they did not check on her to ensure she had adequate hydration and nutrition. *See* Ex. A, Cmplt. ¶¶ 33-36. Even worse, Defendants' staff failed to notice the change in her physical condition as it rapidly deteriorated, and they did not inform her physician of the change in her condition, causing a delay in her receiving care and treatment. *See Id*. ¶ 35. These wrongful acts and omissions by Defendants, caused her to become dehydrated,

malnourished, develop severe hyperglycemia and severe diabetic ketoacidosis, which resulted in a significant pain and suffering, generalized weakness, dysphagia, and an overall deterioration in her physical and mental condition. *See Id.* ¶¶ 39-42.

53.   Moreover, Blackmon's complaint alleges Defendants intentionally staffed their facility with an insufficient number of care personnel, many of whom were not properly trained nor qualified to care for the elders and dependents. *See* Ex. A, Cmplt. ¶ 48. The understaffing and lack of training was designed to reduce labor costs and wrongfully increase their business profits at the expense of residents. *Id.* ¶ 48.

54.   Because Blackmon's alleged injuries were caused by Defendants' neglect, and their wrongful actions and omissions, and not by Defendants' use or administration of any covered countermeasures, the PREP Act has no application here to bar her claims. *See* 42 U.S.C. § 247d-6d(a)(1).

### f.   Defendants' Inaction Do Not Equate to a "Non-Use" or "Non-Administration" of a Covered Countermeasure Exception

55.   "[T]here can be situations where not administering a covered counter-measure to a particular individual can fall within the PREP Act and this Declaration's liability protections."  *See* 85 Fed. Reg. at 79194 (December 9, 2020).  This type of protection applies to cases "[w]here there are limited Covered Countermeasures, not administering a Covered Countermeasure to one individual in order to administer it to another individual can constitute ['administration to an individual' under the PREP Act]."  *See Id.* at 79197.

56.   An example of this situation is when there are limited amounts of COVID-19 vaccine doses, and a healthcare professional chooses to administer the doses to individuals more vulnerable to COVID-19 rather than to persons who are less vulnerable. 85 Fed. Reg. at 79197 (December 9, 2020).  "In that circumstance, the failure to administer the COVID-19 vaccine to the person in a

**MEMORANDUM OF POINTS AND AUTHORITIES**

less vulnerable population 'relat[es] to… the administration to' the person in a vulnerable population." See *Ibid*. "Prioritization or purposeful allocation of a Covered Countermeasure, particularly if done in accordance with a public health authority's directive, can fall within the PREP Act and this Declaration's liability protections." *See Ibid*.

57.    However, in this case, Defendants' omissions and inactions relate to their neglect of Blackmon's care and treatment at Vernon Facility, which ultimately caused her serious physical injuries. Their substandard care provided to her does not fall within any of the exceptions of "non-use" or "non-administration" of a covered countermeasure which would trigger the PREP Act. Their inaction and omissions do not involve a situation where there was a shortage of covered countermeasures, such as vaccines, testing kits, ventilators, or personal protective equipment, which would cause Defendant not to administer them to Blackmon. *See* 85 Fed. Reg. at 79194, 79197 (December 9, 2020). Additionally, Defendant's neglect of Blackmon's care and treatment, did not involve a prioritization or purposeful allocation of a covered countermeasure done in accordance with a public health authority's directive, that constitute an "administration" of a "covered countermeasure." *See ibid*.

58.    In this case, Defendants intentionally understaffed their facility, and employed staff who lacked training, to reduce labor costs and wrongfully increase their business profits at the expense of residents. *See* Ex. A, Cmplt. ¶ 48. There are no allegations suggesting that Defendants' understaffing and employment of undertrained persons, which caused Blackmon's to suffer injuries, was for the purpose of "prioritization or purposeful allocation" of a covered countermeasure done in accordance with a public health authority's directive. *See* 85 Fed. Reg. at 79197 (December 9, 2020).  Hence, Defendants' "inaction" does not fall within the scope of the "non-use" or "non-administration" of covered countermeasures exception, that would otherwise

**MEMORANDUM OF POINTS AND AUTHORITIES**

trigger the PREP Act.

## C. THE PREP ACT DOES NOT COMPLETELY PREEMPT BLACKMON'S STATE LAW CLAIMS

59.     In their notice of removal, Defendants next argue the PREP Act completely preempts Blackmon's claims, and confers federal question removal jurisdiction under 28 U.S.C. § 1441(a). *See* Dfs.' Notice of Removal, Dkt. No. 1, at ¶ 24. To support their argument, Defendants rely heavily on an Advisory Opinion issued by the Office of General Counsel for HHS ("OGC") on January 8, 2021 ["AO 21-01"] (Dfs.' Notice of Removal, Dkt. No. 1, ¶ 24, Ex. D), and the *Grable* doctrine under *Grable & Sons Metal Products, Inc. v. Darue Eng'g. & Mf'g.*, 545 U.S. 308 (2005) ["*Grable*"], where federal question jurisdiction will lie over state-law claims that implicate federal issues. OGC's AO 21-01 provides that the PREP Act is a complete preemption statute, so that when the PREP Act is trigged, complete preemption attaches. *See* OGC's AO 21-01, attached to Dfs.' Notice of Removal, Dkt. No. 1, ¶ 24, Ex. D at 2. Defendants argue AO 21-01 is binding on this Court. *See* Dfs.' Notice of Removal, Dkt. No. 1, at ¶ 31.

### a.  The Legal Standard for Complete Preemption

60.     The PREP Act permits "an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct…" *See Id.*; 42 U.S.C. § 247d-d(d)(1). Such actions must "be filed and maintained only in the United States District Court for the District of Columbia." *See Id.*; 42 U.S.C. § 247d-d(e)(1). For injuries not involving willful misconduct, the PREP Act establishes a "Covered Countermeasure Process Fund," which provides "compensation to eligible individuals for covered injuries directly caused by the administration or use of a covered countermeasure pursuant to such declaration." 42 U.S.C. § 247d-6e(a).

61.     The complete preemption doctrine can turn a complaint pleading only state law claims into a case arising under federal law. *Caterpillar Inc. v.*

19

1   *Williams*, 482 U.S. 386, 392 (1987). Under the complete preemption doctrine,

2   "Congress may so completely pre-empt a particular area that any civil complaint

3   raising this select group of claims is necessarily federal in character." *Metro. Life*

4   *Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987) Complete preemption refers to the

5   situation in which federal law not only preempts a state-law cause of action, but

6   also substitutes an exclusive federal cause of action in its place. *See Hansen v.*

7   *Grp. Health Coop.*, 902 F.3d 1051, 1057 (9th Cir. 2018). Complete preemption is

8   rare. *Id.*; see *City of Oakland v. BP PLC*, 969 F.3d 895, 905 (9th Cir. 2020) [the

9   Supreme Court has identified only three statutes that meet this criteria].

10   62.   "[C]omplete preemption for purposes of federal jurisdiction under §

11   1331 exists when Congress: (1) intended to displace a state-law cause of action;

12   and (2) provided a substitute cause of action." *City of Oakland*, 969 F.3d at 906.

13   The PREP Act does not satisfy the Ninth Circuit's two-part complete preemption

14   test. *See Stone v. Long Beach Healthcare Ctr., LLC*, No. CV 21-326-JFW

15   (PVCx), 2021 WL 1163572, at *5-7 (C.D. Cal. Mar. 26, 2021).

16   63.   However, this Court has found in a previous case that "[t]he PREP

17   Act does not provide an alternative cause of action for the vast majority of cases

18   that might fall under it. At most, it provides a single possible action for willful

19   misconduct that can brought in the District of Columbia." *See Ivey v. Serrano*

20   *Post Acute, LLC*, No. CV 20-11773 DSF (SKx), 1, 3-4 (C.D. Cal. Mar. 25, 2021).

21   Also, "[this] Court [has declined] to find that Congress has completely occupied

22   the field of actions or inactions related to COVID-19 spread and treatment to

23   such a degree that all state law claims related to that topic are subject to

24   removal." *See Id.* at 4.

25   64.   Even if the PREP Act were a complete preemption statute, to trigger

26   this exclusive federal jurisdiction under the PREP Act, plaintiff's claims for loss

27   must be caused by, arise out of, relate to, or result from the administration to or

28   the use by an individual of a covered countermeasure. [Citing 42 U.S.C. § 247d-

1   6d(a)(1).]  *See* AO 21-01 attached as Ex. D to Dfs.' Notice of Removal, Dkt. No.

2   1, at p. 2. As argued above, Blackmon's alleged injuries were not caused by or

3   relate to Defendants' use or administration of any covered countermeasure, and

4   therefore, the PREP Act's purported "complete preemption" does not apply here.

### b.  This Court, In Prior Cases, Does Not Follow OGC's Advisory Opinion [AO 21-01]

6   65.    Furthermore, "[n]either the Secretary nor the OGC provides any

7   significant analysis of *Grable*'s narrow holding and its two-pronged test.

8   Deference to the Secretary's jurisdictional assertion is not due, and adherence to

9   his conclusionary assertion is not warranted." *See Estate of McCalebb v. AG*

10  *Lynwood, LLC*, Case No. 2:20-cv-09746-SB-PVC at 5(C.D. Cal. March 1, 2021)

11  ["*McCalebb*"].

13  66.    In addition, this Court has declined to follow HHS' declaration

14  stating the PREP Act is complete preemption statute. *See Ivey v. Serrano Post*

15  *Acute, LLC*, No. CV 20-11773 DSF (SKx), at 4 (C.D. Cal. Mar. 25, 2021).

16  "Neither the Fourth Declaration nor the advisory opinion is binding on this Court

17  because there is no indication that HHS has been delegated any authority to

18  interpret the somewhat esoteric federal jurisdiction doctrines at issue. [Citing

19  *Smith v. Berryhill*, 139 S. Ct. 1765, 1778-79 (2019)]" *See Martin v. Serrano Post*

20  *Acute LLC*, No. CV-21-187 DSF (SKx) at 1 (C.D. Mar. 25, 2021). This Court has

21  also stated that an "agency may not bootstrap itself into an area in which it has no

22  jurisdiction" such as "the scope of the judicial power vested by the statute." *See*

23  *Smith v. Berryhill*, 139 S. Ct. 1765, 1778-79 (2019), *Martin v. Serrano Post*

24  *Acute LLC*, No. CV-21-187 DSF (SKx) at 1 (C.D. Cal. Mar. 25, 2021).

### c.  *McCalebb* Is a Case Very Analogous to this Case

25  67.    This Court should follow the holding in *McCalebb*, No. 2:20-cv-

26  09746-SB-PVC (C.D. Cal. March 1, 2021), a case more analogous to the facts of

27  this case. In *McCalebb*, plaintiffs filed an action against defendants nursing

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

facility alleging their elderly mother received substandard care when she contracted COVID-19, and defendants negligently failed to take adequate measures to protect decedent from contracting said virus, which resulted in causing their mother's death. *See id*. at 2. Their complaint asserted numerous acts of negligence with only state claims. *See McCalebb* at 2-3.

68.     When the decedent was transferred out of defendant's care and to a hospital for advanced testing and treatment, the decedent was diagnosed with "respiratory distress," "agonal breathing," with signs of severe dehydration, malnourishment, and nonverbal. *See McCalebb* at 1-2. Plaintiffs did not claim the virus itself was the cause of decedent's death, rather they allege the general neglect were all contributing factors in causing the decedent's demise, such as allowing her to become malnourished, dehydrated, etc., as well as failing to take adequate measure to protect her from contracting COVID-19. *See ibid*.

69.     Defendant removed the case to federal court on the basis of the *Grable* doctrine—namely, a federal question embedded the state-law claims, and that the PREP Act completely preempts state-law claims. *See McCalebb* at 3. The *McCalebb* Court disagreed with defendant's arguments and found removal under 28 U.S.C. § 1441 improper because there was no federal question jurisdiction. *See Id.* at 3, 10. The *McCalebb* Court found plaintiffs' claims were not premised on the PREP Act; rather, defendants seek to reply on federal law as a shield to liability, and the reliance on a federal shield, if sufficient to create federal jurisdiction foreshadows much more than a "microscopic effect" on the federal-state divide. *See ibid*. The *McCalebb* Court noted that if defendant's attempts to use the federal shield to defeat ordinary state claims were allowed, "a predictable flood of state cases will arrive at the federal doorstep." *See ibid*. Thus, no federal jurisdiction under *Grable*. *Ibid*.

22

### d. The PREP Act Does Not Meet the Two-Pronged Test under the *Grable* Doctrine

70.　　Under the *Grable* doctrine, the PREP Act does not satisfy two-prong test "whether the 'state-law claim necessarily raise[d] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.' [citing *Grable*, 545 U.S. at 314.]" *See McCalebb*, Case No. 2:20-cv-09746-SB-PVC (C.D. Cal. March 1, 2021), at 3-4.

71.　　Defendants have not shown how Blackmon's negligence claims require an interpretation, or challenge the constitutional validity, of the PREP Act. *See McCalebb*, at 4. In addition, Defendants failed to demonstrate how Blackmon's negligence claims are premised on the PREP Act. *See ibid*. Nowhere in her complaint is the PREP Act implicated. The only allegation relating to COVID-19 is that Blackmon happened to contract the virus in which Defendants now raise the federal PREP Act as an affirmative defense.

### e. This Court Should Decline to Follow the Holding in *Garcia*

72.　　Defendants also cite to the only district court case in the Ninth Circuit, *Garcia v. Welltower OpCo Group LLC*, 2021 WL 492581 (C.D. Cal. Feb. 10, 2021), which finds the PREP Act is a complete preemption statute for which federal question jurisdiction exists. *See id*. at 14; Dfs.' Notice of Removal, Dkt. No. 1, at ¶ 33. However, courts do not follow *Garcia* because it defers to HHS Secretary and OGC's advisory opinions on complete preemption without analyzing Ninth Circuit's two-pronged test. *See McCalebb*, No. 2:20-cv-09746-SB-PVC, at 7-8 (C.D. Cal. March 1, 2021) Thus, because the PREP Act is not a complete preempt statute, the PREP Act does not completely preempt Blackmon's state law claims, to confer federal question jurisdiction.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## D. THERE IS NO FEDERAL OFFICER JURISDICTION UNDER 28 U.S.C. § 1442(a)(1)

73.    Lastly, Defendants argue there is grounds for removal under the federal officer jurisdiction [28 U.S.C. § 1442(a)(1)] because they were acting under the direction of CDC and CMS directives in responding to the COVID-19 pandemic. *See* Dfs.' Notice of Removal, Dkt. No. 1, at ¶¶ 46-50.

74.    "Federal offer removal is available under 28 U.S.C. § 1442(a) if (a) [the removing party] is a 'person' within the meaning of the statute; (b) there is a casual nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal defense.' [citing *Fidelitad, Inc. v. Insitu, Inc.*, 904 F.3d 1095, 1099 (9th Cir. 2018)]" *See Ivey v. Serrano Post Acute, LLC*, No. CV 20-11773 DSF (SKx).

75.    First, Defendants have "failed to establish it acted pursuant to a federal officer's directions." *See Estate of Acosta v. WDW Joint Venture*, No. CV 21-05762 PA (MRWx) at 6 (C.D. Cal. July 21, 2021). Also, "[t]he directions Defendants point to are general regulations and public directives regarding the provision of medical services." *See Martin v. Serrano Post Acute LLC*, No. 20-cv-5937, 2020 WL 5422949 at *1 (C.D. Cal. Sept. 10, 2020).

76.    Second, "[a] private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official.' And that is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored." *See Martin v. Serrano Post Acute LLC*, No. 20-cv-5937, 2020 WL 5422949 at *1 (C.D. Cal. Sept. 10, 2020) [citing to *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 153 (2007)].

77.    As such, Defendants have not shown in their Notice of Removal that they are a person within the meaning of the statute, that there is a casual nexus between its actions, and that they took those actions pursuant to a federal officer's

24

directions, and that it was a "colorable federal defense." *See Fidelitad, Inc. v. Insitu, Inc.*, 904 F.3d 1095, 1099 (9th Cir. 2018)]" As such, Defendants have failed to showed removal was proper under the federal officer removal statute.

## V.   CONCLUSION

38.    The burden of establishing federal jurisdiction rests upon the party seeking removal.  However, Defendants have not established or demonstrated this Court has subject matter jurisdiction over Plaintiff's claims either under the federal question jurisdiction under 28 U.S.C. § 1441(a) or federal officer jurisdiction under 28 U.S.C. § 1442(a)(1). Accordingly, removal to federal court was improper, and this Court should remand this case back to the Superior Court of the State of California in and for the County of Los Angeles.


DATED: August 11, 2021                    MORAN LAW


                                              _____

Lisa Trinh Flint
Attorneys for Plaintiff,
DEBRA ANN BLACKMON, in and
through her Guardian ad Litem,
Latasha Bracks

**MEMORANDUM OF POINTS AND AUTHORITIES**

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of August 2021, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then be sent Electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent by first class mail to any counsel of record indicated as non-registered participants.

DATED: August 11, 2021          MORAN LAW

_____
Lisa Trinh Flint
Attorneys for Plaintiff,
DEBRA ANN BLACKMON, in and
through her Guardian ad Litem,
Latasha Bracks

***Attorneys for Defendants Vernon Healthcare Center, LLC, Rockport Administrative Services, LLC, and Brius Management Co.:***

David Zarmi, Esq.
davidzarmi@gmial.com
8950 W. Olympic Blvd., Ste. 533
Beverly Hills, CA 90211
Tel: (310) 841-6455